120 So.2d 695

**SOUTHERN RAILWAY COMPANY et al.**

v.

**Ruth T. McCAMY, Administratrix.**

**8 Div. 979.**

Supreme Court of Alabama.

March 10, 1960.

Rehearing Denied May 19, 1960.

Mitchell, Poellnitz & Cox, Florence, and Dawson & McGinty, Scottsboro, for appellants.

512

White, Bradley, Arant, All & Rose, Birmingham, and Campbell & Campbell, Scottsboro, for appellee and intervener.

MERRILL, Justice.

Appellee, Ruth T. McCamy, as administratrix of the estate of William P. McCamy, deceased, sued appellants, Southern Railway Company and Joe Hackworth, engineer, for damages as a result of a collision between a train and the truck driven by McCamy at a public crossing in Jackson County. The action was under Tit. 7, § 123, Code 1940.

The Travelers Insurance Company filed a motion for leave to intervene as workmen's compensation insurance carrier of the employer of the deceased, under Tit. 26, § 312, Code 1940, as amended, and leave of court to intervene was granted.

Trial by jury resulted in a verdict and judgment in favor of appellee for $27,500. Appellants filed a motion for a new trial which was overruled, and this appeal followed.

Appellants contend that they were entitled to the affirmative charge because this suit was brought by one who had no authority to institute or maintain the action.

There is no question that Ruth McCamy, as administratrix of the estate of William P. McCamy, deceased, lacked the capacity to sue because she was receiving compensation under the Workmen's Compensation Act, and that act, Tit. 26, § 272, Code 1940, excludes "all other rights and remedies of said employee, his personal representative," and we have held that under such circumstances, the right of the administrator to sue under the homicide statute is withdrawn. Smith v. Southern Ry. Co., 237 Ala. 372, 187 So. 195; Georgia Casualty Co. v. Haygood, 210 Ala. 56, 97 So. 87.

Title 26, § 312, Code 1940, as amended, provides that the dependents of the deceased employee may bring an action against a party other than the employer for the death. The deceased was employed by Campbell Oil Company and, therefore, his widow and dependent could sue appellant.

All that was required to obviate the error at any time during the trial was to amend the count by deleting the words "as administratrix of the estate of William P. McCamy, deceased."

But this defect or error was not called to the attention of the court below. In

Clancy Lumber Co. v. Howell, 260 Ala. 243, 70 So.2d 239, 242, we said:

"* * * The functions of this court in its appellate character are strictly confined to the action of trial courts upon questions which are presented to and ruled upon by them. We cannot put a trial judge in error for failure to rule on a matter which has never been presented to, nor decided by, him. Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308."

A case in point is Rodgers v. Walker, 18 Ala.App. 99, 89 So. 396, because the suit was by the Superintendent of Banks "individually and not in his representative capacity." But no objection was raised during the trial and the amendable defect or error was not called to the attention of the court, and it was held that the appellant's insistence on the affirmative charge was unavailing on appeal.

 But appellants insist that their plea in short by consent raised the defect by special plea. We agree that the matter can be raised under a plea in short, Carraway Methodist Hospital v. Pitts, 256 Ala. 665, 57 So.2d 96. "The principle is well established that the issue of want of capacity in, or right or authority of, the plaintiff to maintain suit is matter in abatement, and that the practice prevailing in suits at law and in equity requires that when a party sued would deny the capacity in which the plaintiff (or complainant) sues, it must be done by plea (or in some cases by demurrer)." City of Prichard v. Geary, 268 Ala. 243, 105 So.2d 682, 685.

 The plea in short with leave, etc., authorized the appellants to avail themselves of any special defense to the cause of action to the same extent as if specially pleaded. Moore v. Williamson, 210 Ala. 427, 98 So. 201; United States Steel Corp. v. McGehee, 262 Ala. 525, 80 So.2d 256. But the trial court must have notice of the matter specially pleaded because we do not review a case here on a theory or on an issue different from that on which the trial was had. Southern Railway Co. v. Terry, 268 Ala. 510, 109 So.2d 919. Here, the defense of want of capacity could have been raised under the plea in short, but it was not made an issue.

Appellants argue that that notice was brought to the court below in their motion for a new trial. Although we discuss this point, we are not to be understood as holding that notice by means of a motion for a new trial is sufficient. As already shown, the notice must come to the court during the trial. The motion for a new trial was filed October 10, 1958, which was within thirty days after judgment. At that time, it contained no mention of the incapacity as to party plaintiff. The motion was duly continued until January 7, 1959, when it was heard by the court. On that date, an amendment to the motion for a new trial was filed adding grounds raising the question for the first time. Appellee filed a motion to strike because the grounds were not germane to the original motion for a new trial.

 The record shows that the trial court did not rule on the amendment or the motion to strike. This action was proper. The case of Sorsby v. Wilkerson, 206 Ala. 190, 89 So. 657, 658, is exactly in point. There, additional grounds to the motion for a new trial were offered on the day the motion was argued, which was more than thirty days from the date of judgment. The court said:

"* * * These additional grounds should not have been allowed by the court, and they will not be considered by this court. The allowance of amendments to a motion for new trial, stating new and different grounds from the original, after the expiration of the 30 days from date of judgment, should not be allowed by the court, and will not be considered by this court. Ferrell v. Ross, 200 Ala. 90, 75 So. 466."

This holding is followed in Atlantic Coast Line R. Co. v. Burkett, 207 Ala. 344, 92

So. 456, and Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388. This disposes of assignments 80, 81, 82, 83, 84 and 85.

Appellants next insist that they are entitled to the affirmative charge because the one count is in simple negligence, and that there is no evidence of initial negligence, there is evidence of contributory negligence and no evidence of subsequent negligence, the three issues on which the case was submitted to the jury.

The collision occurred at a public crossing at Limrock. The train was traveling from east to west along a straight track at 60 miles per hour. The truck, driven by deceased, approached the crossing from the north, traveling south at 20 to 30 miles per hour. Gentle's store faced the railroad and faced south, thereby becoming an obstruction to the driver of the truck when he looked left as he was driving south, and an obstruction to the engineer as he approached the crossing going west and looking to the right of the track. The engineer first saw the truck as it went out of his sight behind Gentle's store. At that time, the truck was about 125 feet north of the track and the train was about 300 feet east of the point of collision. When the truck next came in the view of the engineer, the locomotive was some 40 feet east of the point of collision. The crossing signal had been blown, the headlight of the locomotive was burning and the bell was ringing. Five people who saw the collision testified that the truck did not stop before driving onto the track. There was no testimony that the truck did stop. The truck got nearly across the track, the locomotive hitting the rear end of the truck.

The engineer testified, without objection, that he did everything he could to stop the train after he observed the truck coming onto the track as it traveled the 40 feet before it hit the truck. The engineer had testified at a pre-trial hearing that he did not put on the brakes "until he had hit the man."

The accident happened about 10:30 Saturday morning on a cold, misty, snowy day. It is not disputed that the whistle was blowing at the time of the collision.

The undisputed testimony of the witnesses who were on the west side of Gentle's store was that the deceased did not stop, look and listen before driving his truck upon the railroad tracks. One approaching a railroad crossing is under the duty to stop, look and listen, and a failure to do so constitutes contributory negligence, which defeats any recovery on account of initial primary negligence. Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21; Southern Railway Co. v. Miller, 226 Ala. 366, 147 So. 149; Southern Railway Co. v. Hale, 222 Ala. 489, 133 So. 8.

The real determination then is whether a jury question was presented as to subsequent negligence, which, of course, is included in a count charging simple negligence. Gulf, M. & O. R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449.

Two principles of law governing such cases are:

1. To recover for liability because of subsequent negligence, the burden is on the plaintiff to prove that the trainman saw and realized the danger in time to do something within his power which would probably have prevented the accident. Southern Railway Co. v. Hughes, 267 Ala. 418, 103 So.2d 324; Southern Railway Co. v. Miller, 226 Ala. 366, 147 So. 149.

2. An automobile approaching a railroad crossing at a safe distance cannot be said to be in a position of peril, and the trainmen may assume that the driver thereof will observe the duty to stop, look and listen short of danger. Alabama Great Southern R. Co. v. Moundville Motor Co., 241 Ala. 633, 4 So.2d 305.

The facts most favorable to appellee on the question of subsequent negligence may

be summarized as follows: Appellant Hackworth, the engineer, was familiar with the crossing; he knew that it was a blind crossing to one headed as was decedent, until he was 43 feet from the crossing; the weather was cold and it was misting rain; visibility was poor and the truck was "running pretty fast when I seen him go behind the store" and all he saw was the back end of the truck. Other witnesses on the west side of Gentle's store who saw the truck approaching the tracks became nervous, screamed or turned their heads.

The train was 54 minutes late, was going a "little down grade" and going 60 miles per hour, or 88 feet per second. The engineer, after he saw the vehicle clear the front end of the store and approach the tracks, did not touch his brake, did not cut the throttle and was "still running 60 miles an hour when I hit the truck." He testified "I didn't put the brakes on until I hit the man."

The locomotive hit the back end of the truck, showing that the deceased had nearly crossed the tracks when the collision occurred. (The testimony was that the locomotive was 40 feet from the crossing when the truck was seen and that Gentle's store was 43 feet from the track. It would have been impossible for the truck to have gone 43 feet while the train went 40 feet, at their respective speeds, but that is the testimony.)

The facts here are similar to those in Louisville & N. R. Co. v. Loyd, 186 Ala. 119, 65 So. 153, 156, where the fireman testified that "he saw the plaintiff's wagon 'approaching when it was about 40 feet from the track and the horse was in a trot, going right in the direction of the track. I did not do anything then but ring the bell. I just sat there and rang the bell. This horse and wagon trotted in behind some obstructions from me, cars and lumber and stuff that was piled there, and trotted out on the track in front of the engine. Not until then did I open my mouth to tell the engineer anything about it.' " The court further said:

"* * * The theory of the plaintiff is that while the engineer, when the horse first came in sight of the engine, might not have had time, by quick action, to completely stop the engine before reaching the avenue where the injury occurred, nevertheless he did have time within which to materially diminish the speed of his train before reaching First avenue, and that, if he had done so, the plaintiff would have had time to get away from the point of danger.

\* \* \* \* \* \*

"* * * It was, under all the evidence, for the jury to say whether, if the fireman saw the plaintiff as he claims to have done, he had the right to presume that the plaintiff had also seen the train, and that, when the plaintiff disappeared from the fireman's view—if that was a fact—then whether the fireman did not have the right to presume that the plaintiff had stopped and was waiting for the train to pass. In other words, it was for the jury to say, under all the evidence, whether the failure of the fireman to notify the engineer of the plaintiff's presence was or was not an act of negligence on the part of the fireman."

On rehearing, the majority "are not able to affirm, as matter of law, that, under all of the facts of this case, the fireman had the right to assume that the plaintiff had stopped when he disappeared behind the 'box cars and lumber and stuff' on the side track. They think that, under all the evidence in this case, the question as to whether the fireman had the right to so assume was a question of fact for the jury and not a question of law for the court."

In Central of Georgia Railway Co. v. Foshee, 125 Ala. 199, 27 So. 1006, 1013, in holding that there was evidence of subsequent negligence, and concluding that the

train "probably could not be stopped," the court said:

" * * * But that its speed could have by that additional means been reduced further than it was by the application of the brakes, there was room for the jury to find; and, if it had been further reduced to the extent of delaying its approach to the crossing only a second or two, it is a fair conclusion from the evidence that the intestate would have escaped, since the proof is that she was in the very act of clearing the track on the other side from her entry upon it when she was stricken. On this state of case the court properly refused to give the affirmative charge for defendant on the first count (simple negligence) * * *."

 Under these authorities, and in view of the fact that the engineer saw decedent's truck pass out of sight behind the store going toward the crossing "running pretty fast" on a cold, rainy, misty day, and did nothing to reduce the speed of the train even after it became apparent that deceased was in a position of peril, we think that it was "a question of fact for the jury and not a question of law for the court," and, therefore, the trial court correctly refused to give the affirmative charge requested by appellants.

 Assignment of error 47 reads:

"For that a member of the jury improperly viewed the scene of the accident in suit during the trial of the case. (Tr. pp. 141–146, 152)."

This assignment does not refer to any ruling of the trial court. It does not state concisely "in what the error consists," as required by Supreme Court Rule 1, Code 1940, Tit. 7 Appendix. It is insufficient to invite review of this court. Hanson v. Kennady, Ala.App., 112 So.2d 508.

 Assignment No. 99 charges error in that the court charged the jury upon the effect of the evidence by stating in the oral charge:

"There is one other feature that I feel that you should know about as there has been some testimony, probably some testimony, with reference to what we call under the law subsequent negligence. In other words there would be some testimony probably— don't misunderstand me, I am not attempting to tell you what any of the testimony was. That is for you. What the testimony is is for you."

The choice of words was not most apt, but we have read the entire charge and in at least eleven instances, he told the jury that they were the sole judge of the testimony, or words to that effect.

The question of subsequent negligence was not only submitted to the jury by the oral charge but by written charges requested by appellants. We think that it was made plain to the jury that the issue of subsequent negligence was one for them to determine, and no prejudicial error resulted from the particular choice of words when taken into consideration with the entire charge, both oral and written.

 Assignments 10, 11, 12, 13 and 14 contain the insistence that the verdict was excessive. We cannot say that under the evidence the amount of damages was excessive or that the jury was actuated by passion, bias or prejudice. The trial court heard the evidence and let the verdict stand. We shall not disturb it. City of Mobile v. Reeves, 249 Ala. 488, 31 So.2d 688, and cases there cited.

There are 18 other assignments of error which relate to matters already discussed in the opinion.

The motion for a new trial was properly overruled, and the judgment is affirmed.

Affirmed.

LAWSON, SIMPSON, STAKELY, GOODWYN and COLEMAN, JJ., concur.