219 So.2d 639

**J. D. IVEY**

**v.**

**DIXON INVESTMENT COMPANY et al.**

4 Div. 306.

Supreme Court of Alabama.

Jan. 30, 1969.

Rehearing Denied March 13, 1969.

Tipler & Fuller, Andalusia, for appellant.

A. R. Powell, Jr., Andalusia, for appellees.

HARWOOD, Justice.

In the proceedings below J. D. Ivey filed his complaint against Charles Dixon, Solon Dixon, Thelma Dixon and Ellie Dixon, individually, and as partners doing business as Dixon Investment Company, a Partnership. The complaint charged negligence on the part of the defendants in knowingly furnishing to the plaintiff for plaintiff's use a defective piece of farm machinery, (a corn puller), and that as a proximate result of such negligence, the plaintiff suf-

**592**

fered injuries, losing both of his hands and arms.

The defendants filed a plea in abatement alleging that the plaintiff.was an employee of Dixon Investment Company, a partnership composed of the partners named in the complaint; that the Dixon Investment Company carried Workmen's Compensation insurance upon its employees and that subsequent to the accident the plaintiff elected to accept Workmen's Compensation benefits for his injuries and medical expenses, and as a result the insurer for Dixon Investment Company, a Partnership, etc., has made workmen's compensation payments to the plaintiff to the extent of medical expenses in the amount of $3036.37, and benefit payments to the plaintiff of $720.00, and that the plaintiff has continued to accept such benefit payments up to and subsequent to the filing of this suit.

The plaintiff filed a replication to the plea in abatement, which replication as eventually amended, set forth that at the time of the accident Dixon Investment Company was engaged in farming operations and that the plaintiff was employed as a farm laborer; that the Dixon Investment Company employed less than eight persons, and had made no election to come under the Workmen's Compensation Act; and that Section 263, Title 26, Code of Alabama 1940, provides that in no event nor under any circumstance shall our Workmen's Compensation Act be construed to apply to farmers and their employees.

The court sustained the defendants' demurrer to the plaintiff's replication as to all grounds except Grounds 1 and 2, which merely took issue on the plea.

· The parties agreed in open court that the plea in abatement be heard by the court without a jury.

At the conclusion of the hearing on the plea in abatement, the court entered a judgment which in parts pertinent to this review, is as follows:

"The Court having considered evidence and briefs of the attorneys finds in evidence that the plaintiff knowing accepted the benefits of Workmen's Compensation from the defendant and has made claim in law to recover Workmen's Compensation and is now estopped from making any other claim for damages against the defendants.

"IT IS THEREFORE ORDERED AND ADJUDGED by the court that said cause be and the same is hereby abated and that the defendant go hence without day, and recover of the plaintiff its reasonable cost in this behalf expended.

"Done and ordered this the 24th day of March, 1967."

■ This appeal is from the above judgment which is of such a final nature as to support an appeal. Martin v. Alabama Power Company, 208 Ala. 212, 94 So. 76.

The pleadings, the evidence, and stipulations involved in the hearing on the plea in abatement tend to show that the Dixon Investment Company was involved solely in farming operations and had two employees one of which was the plaintiff. Dixon Investment Company had not filed an election in the Probate Office of Covington County to come under the provisions of the Workmen's Compensation law in Alabama.

The defendants introduced into evidence a "Standard Workmen's Compensation and Employers Policy," issued by the Georgia Casualty and Surety Company. Some thirteen parties are named as the insured in the policy. Eight of the named insured appear to be businesses such as lumber companies, a construction company, and partnerships. Several individuals are also listed. Also listed among the insured are "Solon Dixon, Ellie Dixon, Charles Dixon, and Thelma Dixon, d/b/a Dixon Investment Company."

The plaintiff testified that on the day of the accident he was operating a corn puller on the Dixon Investment Company

farm. The corn puller was manufactured by Ford, and was attached to a Ferguson tractor. It never did "run right," and he had told Mr. Gunter, in charge of the farm, that the machinery was not in the shape it should have been to pick corn. The cogs were worn out and would throw the chains. The machine would clog up as a result. He told Mr. Gunter about the unsatisfactory condition of the corn puller on the first day he operated it and Mr. Gunter had told him "we will get something done to it," said "do the best you can with it." The machine had clogged up repeatedly and at the time of the accident it had again become clogged with corn stalks. He idled the motor, left the tractor and attempted to clear the corn stalks out of the puller. His hands were caught in the puller and were so injured that amputation of both hands and part of the arms was necessary.

After the accident he conferred with Mr. Griffin Sikes, an attorney. Mr. Sikes testified that after the conference with the plaintiff, he informed him he was "pulling out of the case," that the plaintiff was free to employ another attorney. However, it appears that Mr. Sikes did write a letter to the Georgia Casualty and Surety Company, and in reply thereto the company wrote a letter to Mr. Ivey that they would pay him $15.00 a week for 400 weeks for his accident.

After this, the company apparently began paying the plaintiff $15.00 per week on a monthly basis of $60.00. These checks were forwarded to the local agent of the company who then delivered them to Mr. Ivey. The medical expenses were paid directly to the doctor, the hospital, and an artificial limb company. Mr. Ivey testified he had no knowledge that these bills had been paid.

Mr. Frank Tippler, an attorney of Andalusia, was then employed by the plaintiff. Mr. Tippler testified that he informed Mr. Charlie Powell of the General Agent Bureau that in his judgment the plaintiff was not under the Workmen's Compensation laws of Alabama and that any payment made to him would be mere gratuities on the part of whoever paid them.

However, the company thereafter continued to deliver the checks to the plaintiff. These checks were indorsed by the plaintiff's wife and cashed, and have continued to be forwarded up to the time of the trial below.

Chapter 5 of Title 26 (Sections 253–261) sets forth the operating conditions of the compensations laws. Article 2 of Title 5 sets forth the conditions by which qualified parties may elect to come under our compensation laws. Section 263 of Title 26, provides:

"Articles 1 and 2 of this chapter shall not be construed or held to apply to any common carrier doing an interstate business while engaged in interstate commerce, or to domestic servants, farm laborers, or persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession or occupation of the employer, or to any employer, who regularly employs less than eight employees in any one business or to any county, city, town, village or school district. Any employer who regularly employs less than eight employees in any one business or any county, city, town, village or school district may accept the provisions of articles 1 and 2 of this chapter by filing written notice thereof with the department of industrial relations and with the probate judge of each county in which said employer is located or does business, said notice to be recorded by the judge of probate for which he shall receive the usual fee for recording conveyances, and copies thereof to be posted at the places of business of said employers and provided further, that said employers who have so elected to accept the provisions of articles 1 and 2 of this chapter may at any time withdraw the acceptance by giving like notice of withdrawal. In no

event nor under any circumstances shall articles 1 and 2 of this chapter apply to farmers and their employees. (1939, p. 1036, § 2, appvd. July 10, 1940.)"

The last sentence of Section 263, "In no event nor under any circumstances shall articles 1 and 2 of this chapter apply to farmers and their employees," was added by Act No. 661, approved July 10, 1940, effective 1 January 1941. See 1939 Acts of Alabama, page 1036.

■ This language could not be clearer in setting forth the intent and policy of the legislature that farmers and their employees are disqualified from the operation of our Workmen's Compensation laws, and would prevent an agreement, expressed or implied, between the employer and employee to become subject to the provisions of the Workmen's Compensation law as may be done in appropriate cases under the provisions of Section 270 of Title 26.

The attorney for the appellee begins his argument with this statement:

"The fundamental legal question involved on this appeal turns on whether or not the appellant is estopped from maintaining a suit in tort against his employer after having accepted workmen's compensation benefits together with medical pay benefits."

We consider this statement of the fundamental legal question involved to be an oversimplification of the question in that it ignores the constituent elements of estoppel and also ignores the clear provisions of Section 263, supra.

■ The omission to assert a right resulting from ignorance of the right does not constitute estoppel. Fourth National Bank v. Woolfolk, 220 Ala. 344, 125 So. 217. A party invoking estoppel must have in good faith been ignorant of the true facts at the time a representation is made to him, and must have acted with diligence to learn

the truth. Pattillo v. Tucker, 216 Ala. 572, 113 So. 1. Estoppel cannot exist where knowledge of both parties is equal, and nothing is done by one to mislead the other. King v. Langham, 272 Ala. 662, 133 So.2d 669. Further, an estoppel cannot operate to create binding effect against a party under circumstances which would not sustain a contract if one had been made. A party cannot be estopped in pais when he cannot bind himself by contract. Merchants' National Bank of Mobile v. Hubbard, 222 Ala. 518, 133 So. 723, 74 A.L.R. 646.

■ In this regard we note that the general rule is that no contract or agreement can modify a law; the exception being where no principle of public policy is violated, parties are at liberty to forego the protection of the law. See Herman, Estoppel and Res Ajudicata, Vol. II, page 955. The policy declared by the legislature to the effect that farmers and farm employees cannot under any circumstances come within our Workmen's Compensation laws, is a declaration of a general public policy, and therefore farm employers and their employees cannot effectually consent or contract to bring themselves within this law.

■ Measured by the above requirements, we find no grounds for the application of the doctrine of estoppel in the present case. The plaintiff, Ivey, cannot read nor write. He has done nothing to mislead the defendants below other than to cash the compensation checks delivered to him by the defendants' insurer. The Georgia Casualty and Surety Company must be assumed to have known that the Dixon Investment Company employed less than eight employees, that they had never filed an election in the Probate Office of Covington County, to come under the Workmen's Compensation Law, and that under the specific provisions of Section 263, supra, farmers and their employees cannot under any circumstances nor in any event be deemed within the provisions of the compensation law.

Further, without intimating that the complaint filed in this case is in all respects sufficient, it is clear that the action was brought under our Alabama Employers Liability Act, Sections 326–329, Title 26, Code of Alabama 1940. Section 326 of Title 26, reads in parts pertinent to this review:

"Except as otherwise provided by law, when a personal injury is received by a servant or employee in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employee, as if he were a stranger, and not engaged in such service or employment, provided such liability is enforced in a court of competent jurisdiction, in the cases following:

"(1) When the injury is caused by reason of any defect in the condition of the ways, works, machinery, or plant connected with, or used in the business of the master or employer."

Section 329 of Title 26, in the chapter pertaining to the Employers Liability Act, provides:

"No contract of employment, insurance, relief benefit, or indemnity for injury or death entered into by or on behalf of any employee, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employee; but upon the trial of such action against any employer, the defendant may set off therein any sum he has contributed toward any such insurance, relief benefit, or indemnity that may have been paid to the injured employee, or, in case of death, to his personal representative."

Counsel for appellee in his brief and argument relies particularly upon National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734, and Herndon v. Slayton, 263 Ala. 677, 83 So.2d 726. In the *Higginbotham* case, the plaintiff had been employed to paint about 101 houses owned by the defendant for occupancy by its employees. In the opinion the defendant is described as a large industrial plant which carried Workmen's Compensation insurance. After an injury in the due course of his employment, the plaintiff accepted unemployment compensation payments for a considerable length of time. The defendant's insurance carrier eventually declined to make further payments of compensation. The plaintiff alleged that further payments were refused by the company for the reason that he was a casual employee. The defendant's contention was that the payments were cut off because the plaintiff had recovered from his injury. After the payments were discontinued, the plaintiff brought an action under the Employers Liability Act. The material question was whether the plaintiff was a casual employee of the defendant and not within the scope of the Workmen's Compensation Act. It was held that the fact that the plaintiff was employed by the day rather than by the job, and that he had been recently employed, did not put such employment without the compensation statute. Under these facts, the court concluded that the plaintiff, by accepting compensation payments, was bound by his election and was precluded from resorting to the Employers Liability Act.

We do not consider this case decisive of the present case in that the plaintiff in *Higginbotham,* supra, could elect to come under the Workmen's Compensation Act, his employer already being under this Act.

Section 270, Title 26, provides a method by which those employments excepted in a general way by Section 263, may come within the coverage of the Act.

"If both employer and employee shall, by agreement, expressed or implied, or

otherwise as herein provided become subject to this article, compensation, according to the schedules hereinafter contained, shall be paid by every such employer * * *."

However, when Sections 263 and 270 are read together, the sections being in para materia, the clear and specific provision found in the last sentence of 263 prohibiting farmers and their employees coming under the Workmen's Compensation Act negatives any construction that farmers and their employees, in any event or under any condition, could elect to come under the Act.

In Carter v. Uhrich, 122 Kan. 408, 252 P. 240, the Supreme Court of Kansas held that an employee who had accepted workmen's compensation benefits was not estopped from bringing an action in tort, for the following stated reason:

"Plaintiff's predicament is not like that of a litigant who makes an election between two existing but inconsistent remedies. Here plaintiff never had but one remedy, a civil action sounding in tort and which is the one he is pursuing herein. Nor has he so far pursued the erroneous assumption that his rights were governed by the Compensation Act that he is estopped to pursue this civil action."

In Carter v. Ferris (Tex.Civ.App.) 337 S.W.2d 852, the Texas court of Civil Appeals held that an employee was not estopped from bringing a common law action for negligence even though he had accepted $3200 in workmen's compensation benefits paid him by the defendant's insurer. The employee had sought a remedy under the Texas Workmen's Compensation Act, but had been found to be an independent contractor and thus outside the coverage of the compensation act. Under these circumstances, the Texas court termed the payments as "voluntary" and permitted the employee to pursue his tort action.

In Gerstmayr v. Kolb, 158 So. 647, the Court of Appeals of Louisiana concluded that where an employee had accepted and signed receipts for nine weeks for compensation payments, and it was afterwards determined that he was not within the purview of the Louisiana Workmen's Compensation law, the employee was not estopped by acceptance of the compensation payments from suing in tort. Other cases from our sister states are to the same effect. In Pritt v. West Virginia No. R. Co., 132 W.V. 184, 51 S.E.2d 105, 6 A.L.R.2d 562, it was declared that payments under the guise of workmen's compensation payments were "null and void," made without proper legal authority and could not be the basis of estoppel or res judicata.

In Conder v. Hayden (Ky.), 335 S.W.2d 909, the Kentucky Court of Appeals held that estoppel requires more than the bare facts of an employee's asserting a claim under the compensation act or accepting compensation payments.

In our own case of Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530, we find the following statement:

"However, in the light of the provisions of section 13, of the Constitution of 1901, 'That all courts shall be open; that every person, for any *injury* done him, in his lands, goods, *person,* or reputation, shall have a remedy by due process of law' it cannot be said that for an injury done a person, not within the provisions of the Workmen's Compensation Act, that it was the legislative intent by the enactment of said law, to deny such person a remedy, if under the common law or the Employer's Liability Act, or other statute he was entitled to maintain an action therefor."

We hold therefore that since the plaintiff had no action under the Workmen's Compensation Act, his acceptance of compensation payments voluntarily made by

the defendant's insurer, did not estop him from pursuing his remedy under the common law or the Employer's Liability Act.

The second Alabama opinion upon which appellee places much reliance, Herndon v. Slayton, supra, holds that where an employer who sometimes, but not at all times, employed eight or more individuals, and who had in fact accepted the provisions of the Workmen's Compensation Act of Alabama, and carried insurance for the benefit and protection of his employees as provided by the Workmen's Compensation Act, and who represented to an employee that the employee was covered under the Workmen's Compensation law, estops the employer from denying the truth of his assertions that the employee was protected under the Workmen's Compensation Act. A mere recounting of these facts demonstrates the inapplicability of Herndon v. Slayton, supra, to the present case.

Counsel for appellee also cites and relies on those cases which hold to the effect that where an injured employee has agreed to release an employer from liability for injuries, he must prior to an attempted revocation of the agreement and the bringing of an action against the employer, return the money received in consideration of the agreement. See Ledbetter v. Frosty Morn Meats et al., 274 Ala. 491, 150 So.2d 365, as illustrative of the above principle.

Since there was no agreement by Ivey to release the defendants from liability for his injuries in the present case, this principle can have no application.

For the reasons above set forth, the judgment of the lower court abating the present action must be reversed and the cause remanded to the lower court for further proceedings in accord with this opinion.

Reversed and remanded

LIVINGSTON, C. J., and MERRILL and BLOODWORTH, JJ., concur.