**J. E. ELEY, d/b/a J. E. Eley Excavating Co., et al.,**

**v.**

**BRUNNER–LAY SOUTHERN CORPORATION, INC., a Corporation.**

**6 Div. 932.**

Supreme Court of Alabama.

Aug. 3, 1972.

Rehearing Denied Sept. 14, 1972.

Spain, Gillon, Riley, Tate & Ansley, and Ollie L. Blan, Jr., Birmingham, for appellants.

Lange, Simpson, Robinson & Somerville, and White E. Gibson, Jr., Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a decree rendered in a declaratory judgment proceeding in which the trial court held that the lessee, appellant Eley, would be required to indemnify the lessor, appellee, in the event one Vernon, an employee of appellant, was successful in his suit against appellee for injuries sustained while he was operating a TracDril, the machine leased by appellee to appellant under a written lease.

A TracDril is a drilling machine mounted on a half-track crawler that drills holes to contain charges for blasting. About one month after appellant had used the TracDril, Vernon was hurt and he filed a claim against appellant for Workmen's Compensation and apparently was paid.

Vernon also filed a suit against appellee charging that his "injuries and damages proximately resulted from the negligence of the defendant in negligently designing, negligently maintaining, negligently fabricating or supplying to the plaintiff's said employer a machine which was defective or which they should have known was defective causing said crawler drill to injure plaintiff as aforesaid." United States Fidelity & Guaranty Company, having paid the Workmen's Compensation claim, intervened as appellant's insurer.

Appellee then filed the instant action, asking for a construction of the lease as to the question of indemnity and defense of the suit and also sought an injunction against Vernon staying the prosecution of his suit against appellee.

A temporary injunction was issued, demurrers to the bill were overruled and answers were filed. The cause was tried on October 26, 1971, and a final decree was entered, holding that appellant and United States Fidelity & Guaranty Company were obligated to indemnify and hold harmless appellee against the claim asserted by Vernon in his suit at law against appellee. We quote from the trial court's opinion:

"The lease agreement, for the most part, is clear in its terms. There are some ambiguities. In a construction of the entire lease contract the Court finds little difficulty in arriving at the intention of the parties and therefore the Court finds that Complainant should be indemnified against any *proven* judgment in the law-side case but Complainant's liability only begins with the adjudication and collection of a judgment against Complainant as Defendant in said law-side case. There is no liability upon the Respondent, Eley, to *defend* the law-side suit but only to *pay* any loss suffered therein by Complainant (Defendant in the law-side suit) as has been aptly expressed in the brief furnished the Court by two of the Respondents herein. To repeat, no liability on the part of Eley arises until after any judgment against Complainant is paid by Complainant."

The assignments of error raised three contentions, the first being that the indemnity provisions in the lease are ambiguous and should be construed strictly against appellee. The pertinent provisions of the lease are as follows:

"5. The lessee agrees to maintain said machinery and equipment in the same condition as when delivered to it by lessor, and to pay all claims and damages arising from defects therein, or from the use of handling said machinery and equipment, whether from injuries to the

person or property, and to pay for all damages to the equipment during the life of this contract, and to return said property in as good condition as when received to the storage yard of the lessor, * * *

"6. The receipt and acceptance by the lessee of said equipment will constitute acknowledgment that said property has been accepted and found in good, safe and serviceable condition, and fit for use, unless the lessee makes claims to the contrary to the lessor by registered mail with return receipt demanded, addressed to the lessor's office in the City of ————————, within three days after receipt of said equipment. The complaint as made shall set forth in detail its complete nature and the condition of the property received.

\* \* \* \* \* \*
"15. The lessee further agrees to indemnify the lessor against all loss, damage, expense and penalty arising from any action on account of any injury to person or property of any character whatsoever occasioned by the operation, handling or transportation of any of the equipment during the rental period, and while said machinery and equipment is in the possession or under the custody and control of lessee.

"16. The lessee further agrees to protect the lessor on this contract with full insurance coverage, said insurance to cover damage occasioned by fire, theft, flood, explosion, accident, act of God, or any other cause, that may occur during the life of this lease and to protect the lessor for public liability insurance for coverage to the limits of the State laws in which the equipment leased is being used."

The final words of the lease just above where appellant signed were these words, which were evidently typed at the bottom of the printed lease: "We agree to all the above conditions which are thoroughly understood."

One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentation. Grady v. Williams, 260 Ala. 285, 70 So.2d 267; Lester v. Walker, 172 Ala. 104, 55 So. 619. Whether Mr. Eley was aware of the provisions, he was bound by the provisions of the lease because there was no intimation of any fraud, misrepresentation or deceit in the transaction.

We do not think that § 5 of the lease is contrary to, or creates an ambiguity, when considered with § 15. In § 5, appellant agreed "to pay all claims and damages * * * whether from injuries to the person or property," while in § 15, appellant agreed "to indemnify the lessor against all loss, damage, expense and penalty arising from any action on account of any injury to person or property of any character whatsoever." § 5 is narrower in scope than § 15, but § 15 does not limit § 5, nor vice versa. § 5 applies to a limited situation while § 15 applies to any situation. We agree with the trial court that the lease agreement shows the intention of the parties was that appellant would indemnify appellee in the event of a suit such as Vernon filed against it.

Appellant contends that a party may not by contract absolve itself of liability for its own negligence or the negligence of its servants, and an undertaking to indemnify oneself against one's own negligence must be clearly and unequivocally expressed. Appellant cites Smith v. Kennedy, 43 Ala. App. 554, 195 So.2d 820, cert. den. 280 Ala. 718, 195 So.2d 829. But that rule is not always applied. See Deen v. Holderfield, 275 Ala. 360, 155 So.2d 314, and Republic Steel Corporation v. Payne, 272 Ala. 483, 132 So.2d 581. In the latter case, the exculpatory provision was very similar to the provision in § 15 of the lease in the instant case so far as coverage is concerned.

The second part of the contention is supported by the case of United States Fidelity & Guaranty Co. v. Mason & Dulion Co.,

274 Ala. 202, 145 So.2d 711, but we do not think that case is applicable here. There, two provisions in a contract were in conflict and this court said: "It is difficult to see how both provisions can stand. One of them must fall, and that one is the one favorable to the contractor who prepared the agreement." Here, there is no such conflict in the lease. Under the terms of the lease the lessee, appellant, agreed that the TracDril was in good condition when he received it and appellant was removing it from the supervision and control of the lessor. Under these conditions, appellee, as lessor, ran the risk of having someone injured or property damaged while the equipment was being operated, and appellee did not have the opportunity of inspecting or repairing the machine, or passing upon the skill of the persons operating it. There was a substantial business reason why the lease should contain an agreement that during the period of the lease, the appellant would accept responsibility for any injury that might result from the use of the machine. This appears to be reasonable and, as already stated, this court has approved exculpatory provisions in contracts where the main purpose of the contract was not to exonerate one of the parties from his own negligence; and in both *Payne*, 272 Ala. 483, 132 So.2d 581, and *Mason & Dulion Co.*, supra, this court held that the use of the word "negligence" in an exculpatory or an indemnity provision was not necessary to show that the parties intended the indemnity provisions to be effective.

Appellant also cites the case of Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410 (5 Cir. 1958), but it appears that the 5th Circuit Court of Appeals has followed *Payne* and *Deen*, supra, in Black Warrior Electric M. Corp. v. Mississippi Power Co., 413 F.2d 1221 (5 Cir. 1969), and concluded that Alabama courts would follow *Payne* and *Deen*, supra, rather than *Batson-Cook*, supra, in *Black Warrior*, supra. However, fairness requires us to say that a later case of the 5th Circuit, Trans-

continental Gas Pipe L. Corp. v. Mobile Drill. Barge, 424 F.2d 684 (5 Cir. 1970), cited by appellant, cites *Batson-Cook* with approval. We have not cited any of these 5th Circuit cases with approval, but merely to show how the decisions vary in the same court on the question of what the law is in Alabama. Neither do we try to reconcile or distinguish the various decisions. We leave that to the court which originated the various opinions.

There is an annotation on this and allied subjects in 27 A.L.R.3d 663, and at Art. 6, p. 695, several cases are cited that support the proposition that a contractural stipulation requiring the contractor to provide particular insurance protection supports the view that the parties intended the indemnity agreement to cover negligence on the part of the owner. § 16 of the lease in the instant case required such insurance.

 We think that our cases hold that the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity provisions will be read and construed so as to give them the meaning the parties have expressed. We think that in the instant case the intention to indemnify was clearly expressed, it was not ambiguous and the indemnity provisions are effective as between the parties.

██ Next appellant argues that the court erred in rendering the decree because the indemnity provisions contravene Tit. 26, § 272, Code 1940, because § 272 makes Workmen's Compensation the exclusive remedy between an employee and his employer. Section 272 provides:

"The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at com-

mon law, by statute or otherwise on account of said injury, loss of services or death; and except as herein provided in article 1 and article 2 (as the case may be) of this chapter, no employer included within the terms of this chapter, shall be held civilly liable for any personal injury to or death of any workman due to accident while engaged in the service or business of the employer, the cause of which accident originates in the employment; but nothing in this section shall be construed to relieve any employer from criminal prosecution for failure or neglect to perform any duty imposed by law."

This court has not directly decided whether, notwithstanding the provisions of the Workmen's Compensation Act, indemnity from the employer to a third party under an independent contractual relationship is allowable.

In Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530, this court said:

"However, in the light of the provisions of section 13, of the Constitution of 1901, 'That all courts shall be open; that every person, for any *injury* done him, in his lands, goods, *person*, or reputation, shall have a remedy by due process of law' it cannot be said that for an injury done a person, not within the provisions of the Workmen's Compensation Act, that it was the legislative intent by the enactment of said law, to deny such person a remedy, if under the common law or the Employer's Liability Act, or other statute he was entitled to maintain an action therefor. * * *"

This was cited with approval in Ivey v. Dixon Investment Co., 283 Ala. 590, 219 So.2d 639.

■ Our Workmen's Compensation Laws were adopted from those of Minnesota and the Minnesota construction of their laws is of persuasive value to this court. Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315; Pow v. Southern Construction Co., 235 Ala. 580, 180 So. 288.

In Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, the pertinent part of the Minnesota statute is quoted as follows:

" 'The liability of an employer prescribed by sections 176.02 and 176.03 shall be exclusive and in the place of any other liability to such employee, his personal representative, surviving spouse, parents, child or children, dependents or next of kin, *or any other person* entitled to recover damages at common law or otherwise on account of such injury or death, * * *.' (Italics supplied.)"

and the Supreme Court of Minnesota said in that case:

" * * * The act was not intended to affect the rights of other parties not standing in the relationship of employer and employee except to the limited extent expressed in the act itself. By her action here Mrs. Bierman does not sue Lunderberg Motor for damages 'on account of' the injuries of plaintiff (the employee) but for the breach of an independent duty owing by Lunderberg Motor to her.

* * * * * *

" * * * The words 'or any other person' in our statute must be read in connection with the rest of the act and refer to other persons who have a right to sue for the injuries sustained by the employee. * * *"

Other decisions dealing with the "exclusive jurisdiction" clauses in Workmen's Compensation statutes and contracts providing indemnity which reach the same conclusions are Tucci & Sons, Inc. v. Carl T.

Madsen, Inc., 1 Wash.App. 1035, 467 P.2d 386, Pittsburg-Des Moines Steel Co. v. American Surety Co. of New York, 10 Cir., 365 F.2d 412; Titan Steel Corp. v. Walton, 10 Cir., 365 F.2d 542; McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh P. Co. (Mo.), 323 S.W.2d 788.

We must remember that we are not here concerned with the suit of Vernon against appellee except for the fact that there is such a suit. The question here is whether appellant has agreed to indemnify appellee *if* Vernon is successful in that suit. In seeking a declaration that it is entitled to indemnity from appellant, appellee is not seeking to recover the damages sustained by Vernon, but it is asserting its contractual right under the lease to be protected by appellant from any loss which it may suffer as a result of Vernon's injury and his suit against it for damages. This protection may result in appellant being liable for damages in excess of his obligation to his employee, Vernon, under the Workmen's Compensation Act. But this liability is not imposed upon him under the Act. Instead it is imposed by reason of his contract whereby he, in effect, agreed to protect appellee against loss during the period that appellant, the indemnitor, had the sole and exclusive control of the leased machine.

We do not think that anything we have written conflicts with the rule cited by appellant "that when called upon to construe a contract, this Court will consider its nature, facts and circumstances leading up to and attending its execution, relation and condition of parties, nature and situation of subject matter, and apparent purpose of making the contract." Pacific Insurance Company v. Wilbanks, 283 Ala. 1, 214 So. 2d 279.

There was very little testimony adduced at the hearing and there was no attempt to show many facts and circumstances leading up to the execution of the lease but the execution was proved. Most of the other facts came from the lease itself. No witnesses were called by appellant.

It follows that we find no reversible error and the decree of the trial court is due to be affirmed with one modification.

We agree with appellant Eley that the final decree, apparently inadvertently, dealt with the respondent United States Fidelity & Guaranty Co., as though that company was the liability insurer of Eley. There was no allegation in the bill of complaint to that effect, nor any evidence that United States & Guaranty Company was such insurer. That company was alleged to have made certain payments of Workmen's Compensation to the respondent, Vernon. It intervened in the declaratory judgment action, claiming of the complainant, appellant, by way of subrogation, the sum thus paid. Appellee sought no relief against United States Fidelity & Guaranty Company as liability insurer, but prayed a determination whether the respondent Eley, as indemnitor, was liable under the lease to hold harmless appellee from all claims and damages asserted against it by appellant in the pending action at law. Therefore, that portion of the final decree requiring it to indemnify and hold harmless appellant against Vernon's claim is surplusage, not affecting the rights of appellant. And the intervenor, United States Fidelity & Guaranty Company, does not appear to have joined in the appeal.

Paragraph one of the decretal order is amended to exclude the words "and Respondent, Insurer, United States Fidelity and Guaranty Company" and to substitute the word "is" for the word "are" after the word "Company," quoted supra, and as modified, the decree is affirmed.

Modified and affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and McCALL, JJ., concur.