Jane Bartlett PHILLIPS, as Executrix of the Estate of Peter Richard Phillips, Deceased, etc., Plaintiff,

v.

UNIJAX, INC., et al., Defendant.

Civ. A. No. 77–407–P.

United States District Court, S. D. Alabama, S. D.

Dec. 29, 1978.

---

Richard Bounds, Mobile, Ala., for plaintiff.

James J. Duffy, Jr., E. L. McCafferty, III, Cooper C. Thurber and Mack B. Binion, Mobile, Ala., for defendant.

## ORDER AND DECREE ON MOTIONS FOR SUMMARY JUDGMENT AND REMAND

PITTMAN, Chief Judge.

This action for wrongful death arises out of an automobile accident. In Counts One and Two, the plaintiffs seek damages from Unijax, Inc. for the alleged wantonness or negligence of Unijax's employee, the defendant Jerry B. Carner, which allegedly resulted in the death of plaintiffs' decedent. In Counts Three and Four, the plaintiffs have sued Carner alone on the same theories of wantonness and negligence. This action was commenced in the Circuit Court of Mobile County, Alabama, and removed, after severance of the claims against the two defendants, to this court pursuant to 28 U.S.C. § 1441. The defendant Unijax has moved for summary judgment on Counts One and Two. The defendant Carner has filed a motion to remand as to Counts Three and Four.

### FINDINGS OF FACT

On April 9, 1974, the decedent, Peter Richard Phillips, and the defendant Carner were both employees of the defendant Unijax.

Phillips was a traveling salesman with most of his accounts in Mississippi. He worked irregular hours and his sole compensation consisted of commissions on sales he made to customers of Unijax. He did not receive travel pay.

Carner was operations manager for Unijax. His responsibilities included all facets of Unijax's local operations except sales. Carner was salaried, worked regular hours, and received reimbursement for his travel expenses.

Carner was not Phillips' supervisor.

On April 8, 1974, Phillips and Carner decided to travel to Pascagoula, Mississippi, the next day to call on one of Unijax's customers from whom Unijax had been experiencing difficulty obtaining payment for sales made by Phillips for Unijax. While in Pascagoula, Phillips was to call on other of his sales accounts.

Carner and Phillips had previously taken such trips together. On such occasions it was normal for them to travel in Phillips' automobile. On this occasion, however, Phillips' automobile was undergoing repairs and Carner agreed they would take Carner's automobile.

Pursuant to the above plan, on April 9, 1974, at about 8:15 a.m., Carner picked up Phillips at the latter's residence in Mobile and the two drove to Pascagoula.

In Pascagoula the two called on the troubling account as well as other regular customers of Phillips. Phillips made one new sale.

Carner and Phillips lunched in Pascagoula, Phillips having three or four martinis before lunch. Sometime between 1:00 and 1:30 p.m., the two started the drive back to Mobile. On the way back, Phillips consumed several drinks from a bottle of vodka.

On their arrival in Mobile, Phillips requested Carner to drive him to the garage which had been repairing his automobile— the automobile normally used by Phillips to call on customers.

Carner drove to the garage located in Prichard, a northern suburb of Mobile.

After stopping at the garage, the two drove back to Mobile, exited from Interstate Highway 65 onto Springhill Avenue, and traveled towards Phillips' residence.

The two had previously agreed to pick up some company equipment at Phillips' residence and return to work at the Unijax

office. Carner had subsequently decided, however, that Phillips, because of the amount of alcohol he had consumed, should not return to the office that day. He had therefore planned to leave Phillips at home but had not communicated this unilateral decision to Phillips.

During the drive to Phillips' residence, Phillips requested Carner to stop at a service station on Springhill Avenue so Phillips could confer with persons there regarding the repairs being made to his automobile. Carner complied.

After Phillips conversed briefly with the service station personnel, he returned to Carner's automobile. They then proceeded to drive back onto Springhill Avenue.

While driving onto Springhill Avenue from the service station, according to Carner, he noticed another automobile coming toward him and about to collide with his automobile. To avoid the collision, Carner drastically accelerated his automobile. The sudden acceleration, along with other environmental conditions, caused Carner's automobile to flip over. Phillips, who had not put his seatbelt on after getting back into the automobile, was ejected and killed.

Following Phillips' death, plaintiff applied for and accepted Workmen's Compensation benefits from Unijax's Workmen's Compensation carrier.[1] Pursuant to such agreement she accepted benefits of $68.00 per week for a total of $11,932.00 as of September 26, 1977. In addition, Unijax paid plaintiff $1,000.00 in funeral benefits and paid $100.00 into the Second Injury Trust Fund of the State of Alabama.

Plaintiff has not repudiated her agreement to accept Workmen's Compensation payments nor sought to restore the status quo by returning the payments she received.

## CONCLUSIONS OF LAW

■ Where the relationship of employer and employee exists in Alabama, an injury to the employee is presumably subject to the Alabama Workmen's Compensation Act (AWCA), *Code of Alabama* (1975), § 25–5–54; *W. B. Davis & Son v. Ruple*, 222 Ala. 52, 130 So. 772 (1930); *De Arman v. Ingalls Iron Works Co.*, 258 Ala. 205, 61 So.2d 764 (1952). This rule is subject to certain definite exceptions. The AWCA does not automatically apply

"to domestic servants, to farm laborers whose employers have not filed an election to become subject to this chapter or to persons whose employment at the time of the injury is casual and not in the usual course of the trade, business, profession or occupation of the employer or to any employer who regularly employs less than three employees in any one business or to any municipality having a population of less than 2,000 according to the most recent federal decennial census or any school district."

*Code of Alabama* (1975), § 25–5–50.[2]

Except for those classes of employees disqualified by § 25–5–50, the AWCA "is an elective remedy . . . substituted at the election of both employer and employee for other existing remedies . . . ." *Steele v. Aetna Casualty & Surety Company*, 46 Ala.App. 705, 248 So.2d 745 (1971).[3]

---

1. In the Unijax brief and argument to the court, it was asserted that at the time of the application to Unijax for Workmen's Compensation payments for the decedent Phillips' death, she was represented by her own counsel and continues to be represented by that counsel. This was not rebutted nor denied.

2. But "[a]ny employer who regularly employs less than three employees in any one business, any farmer, or any municipality having a population of less than 2,000 according to the most recent federal decennial census or any school district may accept the provisions of [the AWCA] by filing written notice thereof with

the department of industrial relations, a copy thereof to be posted at the place of business of said employer; provided further, that any employer who has so elected to accept the provisions of this article and article 2 of this chapter may at any time withdraw the acceptance by giving like notice of withdrawal." *Code of Alabama* (1975), § 25–5–50.

3. The statute reads:

"When an employer is subject to this article, compensation, according to the schedules hereinafter contained, shall be paid by every such employer, or those conducting the busi-

In death damage cases, however, the AWCA is the exclusive remedy against the covered employer for "[the] death of any [covered] workman who is an employee of the same employer and whose injury or death is due to an accident while engaged in the service or business of the employer, the cause of which accident originates in the employment. . . ." Code of Alabama (1975), § 25–5–53. *See, Slagle v. Reynolds Metals Company,* 344 So.2d 1216 (Ala.1977); *Patterson v. Sears-Roebuck & Co.,* 196 F.2d 947 (5th Cir. 1952). The rights and remedies granted by the AWCA exclude all other common law and statutory remedies of the employee and, *inter alia,* his dependents. *Code of Alabama* (1975), § 25–5–53. Among the rights granted the parties by the AWCA is "the right to settle all matters of compensation and all questions arising under [the AWCA] between themselves . . . ." *Code of Alabama* (1975), § 25–5–56.

■ The decedent Phillips was subject to the AWCA as his was not among the class of employments excluded from coverage by § 25–5–50. The plaintiffs were entitled to compensation for Phillips' death unless the accident causing the death did not "[arise] out of and in the course of", *Code* § 25–5–51, Phillips' employment or unless Unijax could assert one of the defenses enumerated in § 25–5–51.[4] By settling with Unijax, the plaintiffs were relieved of the burden of proof on the issue of whether or not an employer-employee relationship existed between Phillips and Unijax. Moreover, the settlement precludes the plaintiffs from asserting in this action that the accident did not "[arise] out of and in the course of", *Id.,*

Phillips' employment. In *National Cast Iron Pipe Co. v. Higginbotham,* 216 Ala. 129, 132, 112 So. 734, 736 (1927), it is stated:

"It is further shown that plaintiff accepted compensation under the Act, paid him in many installments. He is precluded by this agreement from resorting to the other remedy, if such other remedy existed. . . . *The burden of proof that the injury arose out of and in the course of the employment was accepted by the plaintiff in his pleading, being a condition precedent to compensation in all cases. And, when acceded to by both parties, the claimant is bound by his election.*

"If the facts be such that he may repudiate the agreement or partial settlement, he should restore the status quo by a return of the installment payments made and received by him under the terms of the Compensation Act. And, if such right of revocation exists, it is immaterial that such moneys were paid to the injured [employee] by the 'insurance carrier.' " (Citations omitted). (Emphasis added).

Like the counts against Unijax, the case of *Southern Railway Company v. McCamy,* 270 Ala. 510, 120 So.2d 695 (1960), was an action for wrongful death brought pursuant to *Code of Alabama* (1975), § 6–5–410. There the court stated, 270 Ala. at 513, 120 So.2d 697:

"There is no question that Ruth McCamy, as administratrix of the estate of William P. McCamy, deceased, lacked the capacity to sue because she was receiving compensation under the Workmen's Compensation Act, and that act, [§ 25–5–53] excludes 'all other rights and remedies of

ness during bankruptcy or insolvency, in every case of personal injury or death of his employee caused by an accident arising out of and in the course of his employment, without regard to any question of negligence; except, that no compensation shall be allowed for an injury or death caused by the wilful misconduct of the employee or by the employee's intention to bring about the injury or death of himself or of another, or due to his own intoxication or his wilful failure or wilful refusal to use safety appliances provided by the employer, or due to the wilful

refusal or wilful neglect of the employee or servant to perform a statutory duty or due to any other wilful violation of the law by the employee or his wilful breach of a reasonable rule or regulation of his employer, of which rule or regulation the employee has knowledge. If the employer defends on the ground that the injury arose in any or all of the last above stated ways, the burden of proof shall be on the employer to establish such defense." *Code of Alabama* (1975), § 25–5–51.

4. N. 3, *supra.*

said employee, his personal representative,' and we have held that under such circumstances, the right of the administrator to sue under the homicide statute is withdrawn." (Citations omitted).

To the same effect is the case of *Harris v. Louisville & N. R. Co.*, 237 Ala. 366, 369, 186 So. 771, 773:

"[T]he common law right of action of an employee or his heirs against his employer is abolished by the statutory right in the employee or certain of his dependents substituted in the respects indicated by the statute (citations omitted) in all cases in which the employee elects to proceed under the Workmen's Compensation Act."

Plaintiffs assert the doctrine of election propounded in *Higginbotham, McCamy,* and *Harris,* supra, does not apply where the employer-employee relation is nonexistent at the time of the injury or death. This is arguably true but somewhat misstates the issue in this case. The issue is whether or not the acceptance of benefits under the AWCA precludes the plaintiffs from bringing this action—given a genuine issue as to whether or not their decedent's death "[arose] out of and in the course of his employment."[5] Upon this view of the issue, Unijax must prevail. *Higginbotham, McCamy, Harris, supra.* The case of *Ivey v. Dixon Investment Company,* 283 Ala. 590, 219 So.2d 639 (1969), cited by plaintiffs, is simply inapposite. There the court correctly held that a farm employee, who had accepted and cashed his employer's Workmen's Compensation insurer's checks was not estopped from suing his employer for personal injuries. The decision was grounded in the express exclusion from coverage under the AWCA of farm employees.[6]

The election—estoppel cases are collected at Annot. 50 A.L.R. 223 (1927), *Application For and Acceptance of Benefits Under Workmen's Compensation Act as affecting Right of Action against Employer independently of that Act.* The only cases cited in which the action was permitted to be brought against the employer after acceptance of benefits were those in which the classes of employment were specifically excluded from coverage under the Workmen's Compensation Act.[7]

The Workmen's Compensation law "does not mean one thing when it is to the advantage of an employee so to maintain, and something else when an employer invokes the protection of the law in his favor." *Carraway Methodist Hospital, Inc. v. Pitts,* 256 Ala. 665, 670, 57 So.2d 96 (1952). The rule of decision prohibiting resort to other remedies after electing to proceed under the AWCA is based on the principle that there must be an end to litigation. As

---

5. The court makes no finding as to whether or not the death of plaintiffs' decedent "[arose] out of and in the course of his employment." It was an issue to be determined by the plaintiffs and Unijax when an election was made to apply for and receive Workmen's Compensation benefits.

6. *Code of Alabama* (1975), § 25–5–50, supra, N. 2 and text.

7. The case of *Egan v. E. A. Brown Co.*, 193 Minn. 165, 258 N.W. 161 (1935), deserves special consideration. The AWCA was adopted from the Minnesota Workmen's Compensation Laws. *Brunson Milling Co. v. Grimes,* 267 Ala. 395, 103 So.2d 315 (1958); *Eley v. Brunner-Lay S. Corp.*, 289 Ala. 120, 266 So.2d 276 (1976). Construction of the Minnesota Workmen's Compensation Act by a Minnesota Court is of persuasive value to an Alabama Court, *Id.*, and to a federal district court sitting in a diversity action in Alabama. *Cf., Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Egan,* the plaintiff was injured at the defendant's grain elevator while hauling grain from the farm of X, to whose farm he had been sent to repay work owed X by Y, plaintiff's employer. Plaintiff applied for and received Workmen's Compensation as an employee of Y. Plaintiff then sued the defendant at law for his injuries, alleging that he was actually not an employee of Y but an employee of X who was not subject to the Workmen's Compensation Act. Held: The plaintiff is "not now in a position to claim that he was [X's] employee." 193 Minn. at 167, 258 N.W. at 162. *Contra, Erickson v. Goodell Oil Company,* 384 Mich. 207, 180 N.W.2d 798 (1970) (cited in plaintiffs' brief) (Acceptance of voluntary benefits payments by supposed employer after application for compensation does not preclude subsequent negligence action where no employer-employee relationship in fact existed at time of injury to plaintiff.)

stated in *Crowell v. Benson*, 285 U.S. 22, 47, 52 S.Ct. 285, 291, 76 L.Ed. 598, 610 (1931), the object of compensation acts

"is to secure within the prescribed limits of the employer's liability an immediate investigation and a sound practical judgment, and the efficacy of the plan depends upon the *finality* of the determinations of fact with respect to the circumstances, nature, extent and consequences of the employee's injuries and the amount of compensation that should be awarded. . . ." (Emphasis added).

The plaintiffs' decedent was covered by the AWCA as his class of employment was not excluded by § 25–5–50.[8] Given the difficulty of resolving the factual issue of whether the death of plaintiffs' decedent "[arose] out of and in the course of his employment," plaintiffs arguably had a choice of remedies. By choosing to accept and retain benefits under the AWCA, plaintiffs may not, under the authorities, maintain this action against their decedent's employer.

Unijax also raised the Alabama Guest Statute, *Code of Alabama* (1975), § 32–1–2, as a defense to the negligence count. Since Unijax's motion for summary judgment has been granted on other grounds, this issue is not addressed.

It is therefore ORDERED, ADJUDGED and DECREED that judgment be entered against the plaintiffs and in favor of the defendant Unijax, Inc. It is further ORDERED, ADJUDGED, and DECREED that the remaining issues of this cause against the defendant Jerry B. Carner are hereby REMANDED to the Circuit Court of Mobile County, Alabama. One-third of the costs are taxed to each party.