Robert Lambert appeals from a summary judgment for the defendants in this fraud case.
The facts of the case as outlined in the record, the briefs, and the trial court order indicate the following. Before 1981, Robert Lambert, a Federal employee, chose to be insured under a contract with the Mail Handlers Benefit Plan ("MHBP"), one of a number of insurance plans available to Federal employees. In 1981 Lambert became disabled because of a work-related accident, and he retired in that year under the terms of the Civil Service Retirement Act. A Federal employee who retires under this Act because of a disability may continue to receive Federal disability benefits, including participation in his or her health insurance program, as long as he or she remains disabled. 5 U.S.C. § 8337. The disability is deemed to continue as long as the disabled annuitant does not earn a salary that exceeds 80% of the pre-disability salary. 5 U.S.C, § 8337(d). Thus, because of his disability, Lambert was able to continue his participation in the MHBP, even though he had gained employment in the private sector. Lambert's annual salary when he retired was $22,101; thus, in order for Lambert to remain eligible for the continuation of disability benefits, he could not earn more than $17,681 annually. 5 U.S.C. § 8337(d). If Lambert earned more than $17,681, his earning capacity would be deemed to have been restored and, thus, his disability benefits, including eligibility for participation in the MHBP, would terminate.
In order to establish continued disability, an annuitant must report his or her annual earnings to the United States Office of Personnel Management ("OPM"), which administers Federal employee benefit plans, including the MHBP. In 1992 Lambert reported to OPM that his 1991 income was $6,728. His employer, however, reported to the Social Security Administration that Lambert had earned $19,292 in 1991. When these two agencies cross-referenced their information, they discovered this discrepancy. OPM wrote Lambert on May 28, 1993, requesting that he provide verification of his 1991 earnings within 30 days and warned that if he failed to provide verification of earnings below the 80% limit, his benefits would be terminated retroactively to June 30, 1992. Lambert failed to respond within 30 days, and his benefits were terminated retroactively to June 30, 1992.
After June 30, 1992, but before the termination, Lambert and his family had made several claims for medical benefits under the MHBP. The Plan paid these claims when they were made. After the retroactive termination, however, MHBP determined that the payments on those claims were overpayments and that, under the terms of its contract, it was required to try and recover those payments from the doctors to whom they had been made. MHBP began contacting *Page 63 
the doctors, and it recovered some of the money. Lambert then began receiving letters and demands from the doctors for payment for the services. Lambert complained to his Congressman, who contacted MHBP. MHBP sent Lambert a second letter explaining that his insurance had been terminated retroactively.
On August 31, 1994, Lambert sued MHBP; the National Postal Mail Handlers Union, which sponsors the Plan; and Continental Assurance Company, which underwrites and administers the Plan (collectively "MHBP" hereinafter), alleging breach of contract, bad faith, and fraudulent misrepresentation by intentional suppression of material facts. The trial court granted MHBP's motion to remove the case to the United States District Court for the Middle District of Alabama. Lambert amended his complaint to claim that the defendants were equitably estopped from canceling his insurance. The defendants in their answer raised the defenses of Federal preemption and failure to exhaust administrative remedies. The district court subsequently determined that there was no basis for Federal jurisdiction and remanded the case.
The trial court granted the defendants' summary judgment motion. Lambert appeals from the summary judgment.
In reviewing a summary judgment, we utilize the same standard the trial court used "in determining whether the evidence . . . made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law."Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412, 413 (Ala. 1990).
Lambert first contends that in its dealings with him MHBP fraudulently suppressed information regarding the retroactivity provision of the policy, and he claims it was fundamentally unfair for MHBP to cancel his enrollment retroactively to the date his annuitant status should have terminated.
Suppression of a material fact that a party is under an obligation to communicate constitutes fraud. Ala. Code 1975, § 6-5-102. The elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury. See Gary v.Kirkland, 514 So.2d 970 (Ala. 1987); Wilson v. Brown,496 So.2d 756 (Ala. 1986); Bank of Red Bay v. King, 482 So.2d 274
(Ala. 1985); and Cooper Co. v. Bryant, 440 So.2d 1016
(Ala. 1983).
As Lambert points out in his brief, the obligation to disclose depends upon the relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Berkel Co. Contractors v.Providence Hospital, 454 So.2d 496, 505 (Ala. 1984). Each case must be individually evaluated to determine whether a duty to disclose exists. Id. After considering these factors, we conclude that the Plan did have a duty to disclose that retroactive termination was possible. However, the record shows that MHBP did indeed disclose the possibility of a retroactive application and, thus, did not conceal that it might seek to recover overpayment of benefits paid erroneously in good faith.
When Lambert became disabled and sought to retain his benefits, OPM provided him with brochures, along with his policy, that clearly stated the terms of the Plan. The brochures show that MHBP did not fraudulently suppress information indicating that it could and would terminate coverage if the employee was no longer eligible. The brochure *Page 64 
states that the OPM determines who is eligible for participation in the Plan, that the insured's eligibility to enroll in the Plan is dependent on the insured's continuation as an annuitant, and that it is the insured's responsibility to ensure that he or she is properly enrolled as an annuitant in the MHBP. It was Lambert's duty to disclose to OPM the correct income so that it could determine his eligibility for the Plan. The brochures stated that MHBP had no authority to enroll or disenroll a person without specific instructions from OPM, which made its determinations based on its eligibility requirements, including the 80% limit. Finally, the brochure states, in a section headed "Overpayments," that MHBP "will make reasonably diligent efforts to recover benefit payments made erroneously but in good faith." This statement gives notice that the Plan will attempt to recover overpayments made in error. The overpayments made by the Plan, which the Plan recovered after the retroactive termination, are overpayments adequately described in the brochures. Thus, we cannot conclude that the Plan violated any duty to disclose, because it did indeed disclose the material facts Lambert claims it hid.
Because Lambert did not advise OPM of his private employment when he obtained it, and did not report his private sector income as he was required to do, OPM was forced to remove him from its disability rolls retroactively to the time at which he exceeded the 80% limit, and to recover from him the disability he had been paid improperly. The retroactive application became necessary in this matter when Lambert failed to notify the OPM of his actual income, which was above the 80% limit. Had Lambert timely notified OPM that his income exceeded the 80% limit, his coverage would have ended at the time of the notification and no retroactive application of the termination would have been required. Because of the reasons set out above, we conclude that the Plan did not conceal the fact that it would seek repayment of overpayments.
Lambert next argues that, under the doctrine of equitable estoppel, MHBP is prohibited from retroactively canceling his insurance policy. To establish the essential elements of equitable estoppel, Lambert must show the following:
 (1) That "[t]he person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;"
 (2) That "the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon [the] communication;" and
 (3) That "the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct."
General Electric Credit Corp. v. Strickland Division of RebelLumber Co., 437 So.2d 1240, 1243 (Ala. 1983).
The fact situation here is similar to that presented inOffice of Personnel Management v. Richmond, 496 U.S. 414,110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In Richmond, the plaintiff, a former Navy welder, retired with a disability annuity under5 U.S.C. § 8337, the same statute that is involved in Lambert's case. The plaintiff in Richmond exceeded the 80% limit of5 U.S.C. § 8337(d) because he was given erroneous advice by a Government employee. Although the plaintiff lost his eligibility for disability benefits through no fault of his own, the United States Supreme Court held that the doctrine of equitable estoppel could not apply. Richmond, 496 U.S. at 434,110 S.Ct. at 2476-77. Lambert's own actions led to the cancellation of his annuitant status and, thus, the cancellation of his benefits under the Plan. If Lambert had accurately reported his income, there would have been no retroactive application necessary, because he would have been terminated at the appropriate time.
Furthermore, Lambert was not ignorant of the facts that he claims were suppressed. This Court has stated, "A party invoking estoppel must have in good faith been ignorant of the true facts at the time a representation [was] made to him, and must have acted with diligence to learn the truth." Ivey v.Dixon Investment Co., 283 Ala. 590, *Page 65 
594, 219 So.2d 639, 643 (1969). As noted above in our discussion of the fraud issue, Lambert was given notice of the possibility of retroactive collection of overpayments; thus, he knew of the facts he alleges were not communicated to him. Therefore, we must conclude that the doctrine of equitable estoppel cannot apply to this case.
The circuit court held that the doctrine of Federal preemption bars these claims; it held also that Lambert had failed to exhaust his administrative remedies and that his failure to do so bars these claims. Lambert argues that neither of these holdings was a valid basis for the summary judgment. We need not consider his arguments in this regard. The evidence shows that, as to the substance of Lambert's claims, there was no genuine issue of material fact and that MHBP was entitled to a judgment as a matter of law. See Rule 56, Ala.R.Civ.P. The summary judgment would have been proper even if the two holdings complained of were erroneous.
The judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, INGRAM, and COOK, JJ., concur.