THOMAS, Judge.
Bella Investments, Inc. (“Bella”), appeals from a judgment as a matter of law (“JML”) entered by the Jefferson Circuit Court (“the trial court”) in favor of Multi Family Services, Inc. (“MFS”), on Bella’s negligent-construction and fraudulent-suppression claims. Additionally, Bella appeals the trial court’s denial of its motion for a JML on its negligent-construction and fraudulent-suppression claims.
This is the third time these parties have been before this court. See Bella Invs., Inc. v. Multi Family Servs., Inc., 80 So.3d 921 (Ala.Civ.App.2011) (“Bella /”); and Bella Invs., Inc. v. Multi Family Servs., Inc., 97 So.3d 787 (Ala.Civ.App.2012) (“Bella II”). The procedural history of this ease is set forth in Bella II:
“ Tn June 2003, Bella entered into a contract with MFS for MFS to serve as the general contractor for the construction of a hotel in Gardendale. The contract between the parties included a warranty provision, warranting MFS’s work for one year from the issuance of the certificate of occupancy. MFS, in turn, contracted with various other entities, including David & Company Architects, Inc. (“David & Company”), to serve as the architects for the project and Danny Hawkins d/b/a Danny Hawkins Floor Covering (“Hawkins”) to serve as a subcontractor to install tile flooring in the hotel.
“ ‘The building inspector for the City of Gardendale inspected the hotel on April 5, 2006, and, that same day, issued a certificate of occupancy for the hotel. At the time that the certificate of occupancy was issued, several issues, including cracking in some of the floor tiles, remained outstanding and had been listed on a punch list of items for MFS to remedy. Bella also made requests under the warranty provision of the contract for MFS to repair cracked floor tiles in the hotel. According to Bella, problems with cracking floor tiles continued and MFS failed to remedy the issue.
‘“On August 4, 2008, Bella sued MFS, C. Boyd Edgerton, in his individual capacity, David & Company, and various fictitiously named defendants in the Marshall Circuit Court. In its complaint, Bella asserted claims of negligence/wantonness, negligent hiring and supervision, suppression, and breach of contract. Bella also asserted that MFS’s subcontractors were liable to Bella because Bella was a third-party beneficiary to the contracts between MFS and the subcontractors. Bella then moved the Marshall Circuit Court to transfer the action to the Jefferson Circuit Court; MFS and Edgerton joined Bella’s motion to transfer the action. On September, 30, 2008, the Marshall Circuit Court transferred the action to the Jefferson Circuit Court....
“ ‘On November 3, 2008, Bella amended its complaint, reasserting its claims and substituting Layne Structural, Gonzales Strength & Associates, *718 Inc., Tusco Fence, Inc., and Whiten Pools for some of the fictitiously named defendants. MFS answered Bella’s complaint, denying all its material allegations and asserting certain affirmative defenses, including the statute of limitations. MFS also asserted a counterclaim against Bella, alleging that Bella had breached its contract with MFS by failing to pay MFS the full amount owed under the contract. In addition, MFS asserted a third-party complaint against Sur-esh Parmar and Bharti Parmar, in their individual capacities, alleging that the Parmars had executed a note in favor of MFS, which they had not paid. On May 5, 2010, Bella filed a second amended complaint, reasserting its claims and substituting Hawkins for one of the fictitiously named defendants.
“‘On June 14, 2010, MFS moved the trial court for a summary judgment on all Bella’s claims against it. MFS asserted three bases in support of its summary-judgment motion: (1) that all Bella’s claims were barred by the applicable statute of limitations, as provided in § 6-5-221, Ala.Code 1975; (2) that Bella did not provide MFS with notice of its claims, in contravention of the contract between the parties; and (3) that there was no genuine issue of material fact concerning Bella’s suppression claim. MFS also submitted evidence in support of its summary-judgment motion. Bella filed a brief in opposition to MFS’s summary-judgment motion and submitted evidence in support of its brief in opposition.
“ ‘On September 23, 2010, the trial court entered a summary judgment in favor of MFS on all Bella’s claims against it. In its order, the trial court stated that it had determined, among other things, that Bella’s claims were barred by the statute of limitations. The summary-judgment order also stated that “[t]his order shall not affect [Bella’s] claims against Defendants David & Company ... and [Hawkins],” the only other defendants still remaining in the action.... Bella filed a purported postjudgment motion requesting that the trial court alter, amend, or vacate its summary-judgment order, which the trial court denied. Bella subsequently appealed to the Alabama Supreme Court. Our supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.’
“Bella [I], 80 So.3d at 922-24 (footnotes omitted).
“In Bella [7], we dismissed Bella’s appeal as having been taken from a non-final judgment because several claims against other defendants as well as MFS’s counterclaim and third-party claims were still pending in the trial court and the trial court had failed to certify the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Id. at 924.
“After this court issued a certificate of judgment in Bella [7], on October 13, 2011, MFS filed a motion to dismiss its counterclaim against Bella and its third-party claims against Suresh Parmar and Bharti Parmar without prejudice. Additionally, on October 13, 2011, Bella filed a stipulation of dismissal with the trial court, noting that it stipulated to the dismissal of all its claims against David & Company and Hawkins. That same day the trial court entered an order dismissing MFS’s counterclaim and third-party claims and Bella’s claims against David & Company and Hawkins. On October 28, 2011, Bella filed a timely notice of appeal; its appeal was transferred by the supreme court to this *719 court, pursuant to Ala.Code 1975, § 12-2-7(6).”
Bella II, 97 So.3d at 790-91.
In addressing the appeal in Bella II, this court affirmed “the trial court’s summary judgment in favor of MFS on Bella’s wantonness claim, third-party-beneficiary claim, negligent-hiring, -supervision, and -training claim, breach-of-contract claim, and negligent-construction claim regarding the widespread cracking of tile flooring.” Id. at 800. However, we reversed the “the trial court’s summary judgment in favor of MFS on Bella’s [fraudulent-]suppression claim and its negligent-construction claim” insofar as it related to defects with the doors, buckling floors, and improper installation of the fiber-cement siding, and we remanded the action for further proceedings. Id. On remand, the trial court held a jury trial regarding Bella’s fraudulent-suppression claim and its negligent-construction claim regarding the floors, the doors, and the siding.
The testimony revealed the following facts pertinent to this appeal. Suresh Par-mar testified that he is one of the two principals of Bella Investments; his wife, Bharti Parmar, is the other principal. He testified that Bella was formed to construct the Microtel Inn in Gardendale (“the hotel”). Suresh testified that the total project cost $4,000,000 and that the total contract price between Bella and MFS for construction of the hotel was $2,275,408. He further testified that Bella and MFS reached an agreement that the construction price would be $2,275,408 around 2003 but that, due to financing issues, construction of the hotel did not begin until 2005. However, he testified that MFS honored the 2003 construction-contract price of $2,275,408 in 2005. He testified that the hotel was completed on time, that the hotel’s certificate of occupancy was issued on April 5, 2006, and that April 19, 2006, was the hotel’s first day of business.
Suresh testified that he had relied on MFS to follow the applicable building codes and the building plans throughout its construction of the hotel. He further testified that, at the end of construction, Bella had provided MFS with a “punch list” identifying items to be rectified and that he was not aware of whether MFS had made an attempt to correct those items, although, he said, MFS had indicated that it intended to meet its obligations to Bella in an e-mail exchange. He testified that the punch list did not include problems with the siding, the concrete flooring system, or the installation of the doors. Additionally, he testified that MFS never informed him that the siding had been misapplied, that the flooring system was improper, or that the doors had not been installed correctly and that he would have expected MFS, the general contractor, to tell him that information. He also testified that operational issues could impact the value or income of the hotel.
Richard Laframboise testified that he is employed at E-services, Inc., that he has an Alabama home-inspection license, and that he is certified by the International Code Council as a building inspector. He testified that he had inspected the hotel on August 5, 2010, and then again on October 31, 2012. He testified that his inspections revealed that a flooring membrane, or felt paper, was missing on the second and third floors, that the siding and flashing on the exterior of the hotel had been improperly installed, and that framing issues had caused problems with the doors within the hotel. He opined that the missing felt paper had led to the widespread cracking of the lightweight concrete on the second and third floors. Laframboise also testified that there was no way to determine the amount of damage to the hotel caused *720 by the improper installation of the siding without removing all the siding.
Rayford Smith testified that he had been retained by MFS, that he has a general contractor’s license, and that he had performed an inspection of the hotel. He opined that, based on his inspection, the cost to repair the issues with the siding, the floors, and the doors at the hotel was approximately $116,029.91.
Shane McMillan testified that he is the vice president of Watermark Restoration and that Watermark Restoration does general contracting and work on multifamily dwellings, such a hotels and other commercial structures, across the southeast. He testified that he is a licensed general contractor in the State of Alabama and that he had been to the hotel site about 7 to 10 times to inspect the hotel and to perform destructive testing in one hotel room. He opined that, based on his testing, the estimated cost to repair the damage caused by the defective floors, doors, and siding was $1,106,519.02. Specifically, he testified that the cost to repair “the exterior” would be approximately $207,000, that the cost to repair the floors would be approximately $499,010, that the cost to repair “the interior” would be approximately $114,498.60, and that the cost for a dumpster and a superintendent to be on the site would be approximately $45,131.95; he also testified that Watermark Restoration would expect some profit to perform the repair work on the hotel and that his estimate was based on the E-Services report compiled by Laf-ramboise.
Boyd Edgerton testified he is a principal of MFS. He testified that the contract price between Bella and MFS for construction of the hotel was $2,275,408 and that MFS had been paid in full for the construction project. He testified that he did not have any knowledge that felt paper was used only on very small portions on the second and third floors before pouring the lightweight concrete.
Dennis Key testified that he is the owner of Key and Company and that he is a real-estate appraiser and a certified general appraiser. He testified that he had been informed that the contract price to construct the hotel was $2,275,408 and that he had used that number as the “presumed” value of the hotel for appraisal purposes; that is, Key testified that he did not determine a “before value” of the hotel. Specifically, he testified that, using his methodology, the presumed before value of the hotel was $2,275,000 and that the present-day value would be reduced by at least the repair costs, which, he was told, would be $1,106,519.02. He further testified that the present-day value could be reduced by more than just the repair costs. Key testified that he had never been to the hotel, that he had not consulted anyone in the hotel business to do his valuation, and that he had seen the estimated repair costs for the first time on the day of trial. Key testified that many factors, such as rates charged, competition, and hotel management, can affect the market value of a commercial property such as a hotel. On cross-examination, he testified that being informed that other testimony indicated that repair costs would be in the $115,000 to $116,000 range could “impact” his valuation. He further explained that the number he was talking about was “hypothetical” and that he was just trying to explain the “methodologies” used to value a property. Specifically, he testified: “I am here, as I said, to state the methodology of which damages are applied. I know nothing about this specific property other than hypothetical opinion that we were talking about here as it would apply in a certain condition of damages to property and the methodology as such.” He further testified that “I didn’t do a valuation. I did a *721 methodology explanation and that’s all I did.”
At the close of Bella’s case, MFS moved for a JML. Bella also moved for a JML. The trial court heard oral argument concerning the motions, and, on January 31, 2013, the trial court entered a JML in favor of MFS on Bella’s claims. Bella timely appealed the trial court’s decision to this court on March 8, 2013. This court transferred the appeal to our supreme court for lack of jurisdiction. Our supreme court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal, Bella argues that the trial court’s JML is due to be reversed because, it contends, it presented sufficient evidence of damages to the hotel to support its negligent-construction claim. Additionally, it contends that the trial court erred as a matter of law in entering a JML on its fraudulent-suppression claim because, it says, the trial court applied the incorrect elements in examining that claim. Moreover, Bella contends that it presented evidence sufficient to warrant a JML in its favor on its claims.
Our standard of review of a JML is well settled.
“In Delchamps, Inc. v. Bryant, 738 So.2d 824 (Ala.1999), our supreme court explained the standard of review applicable to a trial court’s ruling on a motion for a judgment as a matter of law:
“ “When reviewing a ruling on a motion for a [judgment as a matter of law (“JML”) ], this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present “substantial evidence” in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).’
“738 So.2d at 830-31.”
Leonard v. Cunningham, 4 So.3d 1181, 1184 (Ala.Civ.App.2008).
First, Bella argues that the JML in favor of MFS on its negligent-construction claim is due to be reversed, because, it says, it presented sufficient evidence of damages. Bella’s first argument is twofold. Specifically, it contends that the evidence of repair costs is sufficient under applicable Alabama law to establish damages and second that, even assuming that evidence of repair costs is not sufficient, the evidence presented, taken in the light most favorable to it, was sufficient to allow the jury to infer the market value of the hotel both before and after the damage (“the before and after values”). We disagree.
*722 Initially, we address Bella’s contention that evidence of repair costs is sufficient evidence of damages on its negligent-construction claim. The negligent-construction claim is a tort claim, and it is well settled that “[t]he elements of a negligence claim are .a duty, a breach of that duty, causation, and damage.” Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala.2001) (citing AALAR, Ltd., Inc. v. Francis, 716 So.2d 1141, 1144 (Ala.1998)). Thus, evidence of damages is an essential element of the negligent-construction claim. See Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330, 335 (Ala.2006) (“Damages are an essential element of the tort of negligence.”). In its motion for a JML, MFS asserted that Bella had failed to present evidence of damages, an essential element of its negligent-construction claim, and, thus, that MFS was entitled to a JML. Specifically, MFS argued that, under Alabama law, “[t]he proper measure of damages for property injury in a tort action is the difference between the fair market value of the property before the injury and the fair market value after the injury.” Nelson Bros., Inc. v. Busby, 513 So.2d 1015, 1017 (Ala.1987) (citing Dooley v. Ard Oil Co., 444 So.2d 847 (Ala.1983)). In contrast, at trial and on appeal, Bella contends that evidence of cost of repair is sufficient to establish the damages under the facts of this case. In support of this contention, Bella cites QORE, Inc. d/b/a QORE Property Sciences v. Bradford Building Co., 25 So.3d 1116 (Ala.2009), IMAC Energy, Inc. v. Tittle, 590 So.2d 163 (Ala.1991), and Birmingham Coal & Coke Co. v. Johnson, 10 So.3d 993 (Ala.2008). We will examine these cases in turn.
In QORE, our supreme court rejected QORE’s argument that the trial court had erred in denying its motion for a JML and affirmed the judgment on the jury’s verdict in favor of Bradford on Bradford’s breach-of-contract claim regarding the construction of a Walgreen’s store. 25 So.3d 1116. In affirming the judgment, our supreme court considered whether Bradford had presented sufficient evidence of damages and concluded that the evidence indicating that the damage would not have occurred had the contract not been breached, coupled with the evidence of repair costs, was sufficient to support the damages awarded by the jury. Id. at 1126-27. However, the opinion in that case is not instructive because, unlike the case at hand, it analyzed a breach-of-contract claim, which was not before the jury in this case. See Bella II, 97 So.3d at 797-98 (affirming the trial court’s summary judgment in favor of MFS on Bella’s breach-of-contract claim).
In IMAC Energy, 590 So.2d at 168, our supreme court affirmed the jury’s award of damages resulting from the Tittles’ claims of negligence and wantonness, in which they had sought compensation for damage they had sustained to their house and property as a result of IMAC Energy’s blasting operations occurring near the house. In affirming the jury’s damages award, our supreme court noted that “[t]he proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage.” Id. at 168. In support of their negligence claim, the Tittles presented evidence indicating
“that in January 1983, they paid $41,300 for the construction of their residence and that on August 3, 1988, after the blasting had ceased, the Tittles obtained a repair estimate of $8,500. Although the Tittles presented no evidence indicating the difference in the fair market value of their property before the blast- *723 mg and its fair market value after the blasting, they testified that they were unable to obtain an appraisal of their residence after litigation had begun.”
Id. Thus, our supreme court noted that the testimony indicated that the Tittles were unable to get an appraisal of the fair market value of the house after the damage had occurred but also indicated the fair market value of the house before the damage occurred.
In the present case, Bella had an appraiser testify as an expert, but he testified only as to his “methodology” based upon “presumed” numbers. Specifically, Key testified that “I didn’t do a valuation. I did a methodology explanation and that’s all I did.” Key was questioned about the factors that are used to determine a valuation of a commercial property like a hotel; Bella’s counsel offered to stipulate that “a number of different factors could affect the value of the hotel.” Key specifically mentioned occupancy rates and the presence of pests, like insects and vermin. Without evidence of the expected occupancy rates, the cleanliness of the hotel, and a myriad of other factors, the jury lacked evidence from which to extrapolate the fair market value of the hotel at the time it was completed, had it been properly constructed. The only evidence concerning the value of the hotel was the $2,275,408 contract price agreed upon in 2008, as opposed to the fair market value of the hotel upon completion in 2006, and that amount did not take into account any of the myriad factors that are required to perform a valuation of a commercial property like a hotel. Thus, unlike the Tittles in IMAC Energy, Bella did not present evidence of the fair market value of the property before the alleged injury. Further, Bella failed to prove that it was unable to ascertain information regarding the before or after values of the hotel or that it could not secure a valuation of the fair market value of the hotel after the damage occurred. Thus, we conclude that IMAC Energy is distinguishable from the case at hand.
In Johnson, our supreme court affirmed a trial court’s award of damages to the plaintiffs for blasting operations that damaged 10 houses. On appeal, Birmingham Coal contended that the damages award was unsupported by the evidence because, it argued, “six plaintiffs did not express an opinion on the diminution, if any, in the value of their houses and because the trial court based its award on evidence of repair costs and diminution in value.” Johnson, 10 So.3d at 998. In support of this argument, Birmingham Coal cited Poffenbarger v. Merit Energy Co., 972 So.2d 792 (Ala.2007), which our supreme court concluded was inapposite. Thus, our supreme court affirmed the trial court’s award of damages because, it determined, “Birmingham Coal [failed to] present to [it] any other argument or authority indicating that the trial court’s method of calculating the property damages is in error.” Johnson, 10 So.3d at 998. Thus, Johnson, too, is unlike the case at hand, in which MFS presented sufficient authority at trial and before this court to support a JML in its favor on Bella’s negligent-construction claim because of the insufficiency of the evidence regarding Bella’s damages.
Next, we consider Bella’s argument that the trial court erred in granting a JML in favor of MFS because, it says, it presented sufficient evidence from which the jury could have inferred the before and after values of the hotel. In support of this argument, Bella highlights the testimony of Suresh Parmar that the hotel project was a $4,000,000 project and that the contract between Bella and MFS to construct the hotel was in the amount of $2,275,408. Additionally, Bella highlights Key’s testimony regarding the methodolo *724 gy of how to assess damages as an appraiser, Smith’s testimony that the repair cost was $116,029.61, and McMillan’s testimony that the cost to repair the damage would be $1,106,519.02. Bella asserts that the aforementioned testimony provided sufficient evidence from which a jury could have inferred the before and after value of the hotel. We find this argument misguided.
Initially, we note that Bella supports this argument that an inference regarding the before and after values of the hotel would be sufficient with only one general citation to West v. Founders Life Assurance Co. of Florida, 547 So.2d 870 (Ala.1989), which is a case regarding the sufficiency of the evidence in the context of a summary judgment. However, even if we excuse the lack of specific authority, Bella’s argument fails.
The record undisputedly indicated that the contract price of $2,275,408 was decided upon between Bella and MFS to construct the hotel in 2003 but that the construction did not begin until 2005 due to issues with financing. The evidence also undisputedly indicates that MFS honored the 2003 contract price in 2005. Thus, the evidence indicated that $2,275,408 was merely a contract price agreed upon in 2003 as opposed to the fair market value of the hotel upon completion in 2006. See Jenelle Mims Marsh, Alabama Law of Damages § 33:1 (6th ed. 2012) (“ ‘Market value’ is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or to buy.”). Moreover, we note that Key did not testify as to the hotel’s before and after values; rather, he testified only as to a methodology to value the hotel based on a presumed initial market value based upon the 2003 contract price and estimated repair costs. Key further testified that other factors such as income and nearby competitors are relevant factors to consider when conducting a valuation on a commercial property such as the hotel. Additionally, Suresh Parmar did not testify regarding the value of the hotel, although he was allowed to do so because, as a principal of Bella, he was an owner of the hotel. See Alabama Power Co. v. Cummings, 466 So.2d 99, 102-03 (Ala.1985) (“The general rule is that an owner of real estate is competent to testify as to its value.”). Accordingly, although repair costs is a factor to consider in determining the after-damage fair market value of real property, see Kerns v. Pro-Foam of South Alabama, 572 F.Supp.2d 1303, 1305-06 (S.D.Ala.2007), we cannot conclude that the evidence presented was sufficient to provide the jury with a reasonable basis upon which it could determine the before and after values of the hotel so as to assess the appropriate amount of damages under Alabama law. See Parsons v. Aaron, 849 So.2d 932, 949 (Ala.2002) (“[D]am-ages may not be awarded where they are remote or speculative. A jury must have some reasonable basis for the amount of its award.”).
Based on the cases cited by both Bella and MFS it is clear that, pursuant to Alabama law, the law regarding damage to real property in a negligence action is well settled. Specifically,
“[t]he proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage. Nelson Brothers, Inc. v. Busby, 513 So.2d 1015, 1017 (Ala.1987); Dooley v. Ard Oil Co., 444 So.2d 847, 848 (Ala.1984). Although mathematical certainty is not required, a jury cannot be left to speculate as to the amount of damages, but ‘ “[t]his does not *725 mean that the plaintiff must prove damages to a mathematical certainty or measure them by a money standard. Rather, he must produce evidence tending to show the extent of damages as a matter of just and reasonable inference.” C. Gamble, Alabama Law of Damages § 7-1 (2d ed. 1988).’ Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 820 (Ala.1988). (Emphasis added.)”
IMAC Energy, 590 So.2d at 168.
In this case, Bella failed to present evidence either of the fair market value of the hotel before the damage or of the fair market value after the damage. Additionally, we cannot conclude that evidence of repair costs alone is sufficient to support a damages award regarding the negligent construction of the hotel under the facts of this case. Accordingly, although it presented evidence of the 2003 contract price for the construction of the hotel, of repair costs, and of the methodology to be used to value the hotel based on the repair costs, Bella failed to adduce sufficient evidence to establish its damages under Alabama law. Furthermore, Bella’s argument that the evidence presented could support an inference of the fair market values of the hotel before and after the damage, thus indicating the hotel’s diminution in value, fails. See Poffenbarger, 972 So.2d at 801 (stating “that the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof’); IMAC Energy, 590 So.2d at 168 (affirming damages award in property-damage case as being based on sufficient evidence where plaintiffs made no direct showing of difference in fair market value before and after defendant’s blasting conduct but did submit evidence of amount paid for property and repair estimate for the property); Southern Ry. Co. v. Slade, 192 Ala. 568, 573, 68 So. 867, 870 (1915) (“While the reasonable cost of the burned building, or of similar new buildings, is not the criterion of value, yet evidence thereof is relevant in support of opinion evidence as to actual value....”); Alabama Great Southern R.R. v. Johnston, 128 Ala. 283, 295, 29 So. 771, 775 (1901) (“Though the cost of building new houses of the kind burned was not the criterion by which to measure the damage caused by their destruction, evidence of such cost was relevant as tending to throw light on their value.... ”); see generally Arrick v. Fanning, 35 Ala.App. 409, 413, 47 So.2d 708, 712 (1950) (stating, in a case involving damage to personal property, that “evidence of the amount required to make necessary repairs is an evidential factor which the jury is authorized to consider in arriving at the true measure of damages”); Alabama Pattern Jury Instructions-Civil § 11.38 (3d ed. 2012) (similar). Thus, because Bella failed to present sufficient evidence of damages, the trial court properly entered a JML in favor of MFS on Bella’s negligent-construction claim.
Bella next contends that the trial court erred in granting a JML in favor of MFS on its fraudulent-suppression claim. Specifically, it asserts that the trial court erred because, it contends, the trial court applied the incorrect elements of a fraudulent-suppression claim, as indicated by its judgment, which states that “a plaintiff is required to show that the defendant made a false representation concerning a material fact.” It argues that evidence of a false representation is not required.
“The elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) in *726 ducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.” Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996). We note that the second element — “concealment or nondisclosure of material facts by the defendant” — differs in wording and in substance from the trial court’s diction — “false representation.” However, the trial court’s incorrect diction is of no consequence in this case. As noted above, we review a trial court’s ruling either granting or denying a JML under the same standard as the trial court applied — i.e., we ‘“must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.’ ” Leonard v. Cunningham, 4 So.3d at 1184.
In this case, the trial court granted a motion in limine filed by MFS to restrict Bella from presenting Danny Hawkins’s verified answer, upon which this court relied in reversing the summary judgment on the fraudulent-suppression claim. See Bella II, 97 So.3d at 798. Thus, that pleading was not before the jury. Additionally, the testimony failed to indicate that MFS had concealed or failed to disclose any material fact. Instead, Edger-ton, the only witness associated with MFS, testified that he did not have any knowledge as to whether felt paper was used on only very small portions on the second and third floors before pouring the lightweight concrete. Thus, Bella presented no testimony indicating that MFS was aware that the usage of lightweight concrete without the accompanying felt paper would cause cracking throughout the concrete floors on the second and third floors of the hotel. Additionally, the record is devoid of any testimony regarding any concealment or nondisclosure regarding issues with the hotel’s siding or doors. On appeal, Bella contends that because MFS was the general contractor and because, based on the destructive testing, experts found deficiencies in the siding, doors, and floors of the hotel, MFS either knew or should have known that it had improperly constructed the hotel. Essentially, Bella’s argument on appeal concerning fraudulent suppression focuses only on what it alleges MFS should have both known and disclosed but that Bella itself could have discovered through its employment of independent architects, which it had on the construction site. See Richard Brown Auction & Real Estate, Inc. v. Brown, 583 So.2d 1313 (Ala.1991) (holding that a plaintiff has no valid claim of suppression concerning a fact that the plaintiff could have ascertained). Thus, we affirm the trial court’s JML in favor of MFS on Bella’s fraudulent-suppression claim.

Conclusion

Because we conclude that the trial court properly granted a JML in favor of MFS on Bella’s negligent-construction and fraudulent-suppression claims, we preter-mit consideration of Bella’s final argument that the trial court should have granted a JML in its favor on those claims. Therefore, we affirm the trial court’s judgment.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
MOORE, J., concurs in part and dissents in part, with writing.